**J. R. PARKER et al., Plaintiffs,**

v.

**BROWN & ROOT et al., Defendants.**
**Civ. A. No. 11438.**

United States District Court
S. D. Texas,
Houston Division.
July 28, 1961.

Bell & Singleton, Hayden & Pravel, Houston, Tex., for plaintiffs.

Butler, Binion, Rice & Cook, Houston, Tex., for defendants.

INGRAHAM, District Judge.

Under the provisions of Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C., the Court herewith files the following findings of fact and conclusions of law:

## Findings of Fact

1. Plaintiff, J. R. Parker, is the owner of the patent in suit, Reissue No. 24,-441, reissued March 4, 1958.

2. The claims 1–9 of the patent in suit Re: 24,441, are valid. Claim 1 is the principal claim in the patent in suit, and the other claims 2–9 are dependent therefrom.

3. Claim 1 of the patent in suit includes two die assemblies, one for the threading of the female threads on a pipe and another set of dies for forming the male threads on the other end of a pipe. The important features of the thread forming apparatus of claim 1 in-

clude the positioning of the inner die within the bore of the pipe to be threaded while the outer die is brought down into contact with the pipe prior to the threading, the axes of the threading dies and of the pipe being parallel to each other during the threading operation, and the pipe being supported for rotation and unrestrained longitudinal or axial movement during the forming of the threads on the pipe. With such construction, the pipe may be readily inserted on the dies and removed therefrom economically and without any appreciable wear on the dies. The axial movement of the pipe during the threading operation is especially important because it prevents the distortion or destruction of the threads previously formed during the rotation of the dies relative to the pipe.

4. The Parker patent in suit is not entitled to have pioneer status, but it does provide a decided advance in the art of threading pipe. Parker was the first to provide a thread rolling machine in which the pipe being threaded is supported for rotation and unrestrained axial or longitudinal movement, which constitutes a new structure operating on a new principle as compared to the prior art, and the patent in suit is therefore entitled to a reasonable range of equivalents.

5. The plaintiff, J. R. Parker, began working with thread rolling machines in about 1948, and particularly in connection with the "1948 Parker Machine" which had certain defects and which operated on a different principle and with a different structure from the thread rolling machine revealed in the Parker et al. patent in suit, Re: 24,441. The 1948 Parker machine had an outer die which rotated in orbit like a satellite about the inner die, the dies were closed prior to the insertion of the pipe therebetween, the pipe was clamped and prevented from rotating during the threading operation, and the pipe was forced in between the dies to form the threads. Such 1948 Parker machine was defective in that the dies required constant replacement and although such 1948 machine was usable, it was never a commercially satisfactory machine. The defendants themselves purchased the 1948 Parker machine from J. R. Parker and attempted to use such machine commercially, but even with the technical personnel of Brown & Root, Inc., the defendants were unable to make the 1948 Parker machine operate commercially successfully.

6. The patentees of the patent in suit, Re: 24,441 solved the need of the industry and overcame the defects of the 1948 Parker machine and the other prior art by the invention as set forth in the patent in suit, Re: 24,441. Such patent in suit operates on a new principle and with a new structure as compared to the 1948 Parker machine in that the dies do not have the same type of satellite movement as the 1948 Parker machine, the dies are mounted for inserting the inner die within the pipe prior to the threading operation rather than forcing the pipe between the closed dies as in the 1948 machine, and the dies of the patented machine support the pipe for unrestrained longitudinal or axial movement and rotation of the pipe during the threading operation instead of clamping the pipe to prevent rotation as in the 1948 Parker machine.

7. The closest patents in the prior art are the Finch Patent No. 2,669,139 and the Merolle Patent No. 1,392,844. Both of such patents relate to thread forming machines, but both of such patents specifically disclose that the pipe or tubular member (cap in Merolle) is held or fixed and is prevented from moving axially or longitudinally during the forming of the threads. Such structure in the prior art is contrary to, and involves a different structure and a different principle of operation from the Parker patent in suit which specifically provides for the axial or longitudinal movement of the pipe during the threading operation. There was no evidence that the structure of either the Finch patent or the Merolle patent was ever used commercially.

8. The patents considered to be the closest, or as close as, any of the other prior art of record by the defendants' expert are Oakley No. 1,623,807, Finch

No. 2,669,139 and Merolle No. 1,392,844 all of which were cited and considered by the Patent Office during the prosecution of the patent in suit. The Oakley patent does not disclose any apparatus for forming threads on a pope or tubular mem ber. Neither the Finch patent nor the Merolle patent discloses the most important feature of the Parker patent, namely, the supporting of the pipe for unrestrained axial movement during the rolling of threads on the pipe with the inner and outer dies.

9. The thread rolling machine of the Parker patent in suit has enjoyed substantial commercial success and has been used exclusively by both plaintiffs and the defendants since its invention.

10. The patent in suit Re: 24,- 441 is a reissue of the original Parker Patent No. 2,800,942 granted July 30, 1957. The claims of the original Patent No. 2,800,942 were not changed when issued in the Reissue Patent No. Re: 24,- 441, the patent in suit, except for the correction of a printer's error in claim 1 by the insertion of the word "in" in line 49, column 8 of the reissue patent. The application for the reissue was timely, and the defendants did not acquire any intervening rights as a result of the reissue. The reissue of the original patent was to correct an obvious draftsman's mistake appearing in Fig. 6 of the drawings. Such draftsman's error consisted in the location of the flange 22c in contact with the pipe being threaded at the beginning of the threading operation whereas that flange should have been spaced from the pipe until the end of the threading operation to conform with the description in the original application of axial movement of the pipe during threading (column 7, lines 33-47 of original Parker patent). The patent was reissued for the same invention as the original patent. No change was made in the meaning of the claims of the original patent or the reissue patent by the correction of the draftsman's error. The mistake in the original patent was not made with any deceptive intention on the part of the patentees, and all require-

ments of Title 35, U.S.Code, § 251, were complied with in reissuing the original Patent No. 2,800,942 as Reissue No. Re: 24,441. The Reissue patent Re: 24,441 is therefore valid.

11. Claims 1–9 of the patent in suit, Re: 24,441 are infringed by defendants because of their manufacture and use, in the Southern District of Texas, of the thread rolling machine identified as the Brown thread rolling machine, (and also as the Brown & Root thread rolling machine) as exemplified by the photographs of defendants' three stage machine, Plaintiffs' Exhibits 10–12, and by photographs of defendants' four stage machine, Plaintiffs' Exhibits 40–42.

12. The defendants' thread rolling machine, as first built in 1954 was a three stage machine with the threading units positioned for threading both ends of a pipe in a single stage or simultaneously. The defendants' thread rolling machine was operated as a three stage machine so as to thread both ends of a pipe simultaneously up until the middle of 1957 when the threading unit for rolling the male threads was relocated to operate as a four stage machine in which the male and female threads were formed on the pipe in separate stages but while still operating the male and female threading dies simultaneously and substantially in synchronism. The same threading units and the same threading dies were used on the four stage Brown thread rolling machine in 1957 as had been used before on the three stage machine. The principal features of the Brown thread rolling machine remained the same after the change in 1957 as before. The three stage Brown machine infringed claims 1–9 of the patent in suit; the relocation of the threading unit for forming the male threads on the pipe in the four stage machine did not avoid infringement of claims 1–9 of the patent in suit, since the four stage machine still retained the important inventive features of the claims, did substantially the same work and obtained substantially the same results after such relocation as before, and therefore the four stage

Brown thread rolling machine is the mechanical equivalent of the three stage machine and the Parker machine as set forth in claims 1–9 of the patent in suit.

13. The patent in suit disclosed as its preferred embodiment the simultaneous forming of threads on the male and female ends of a pipe, but the patent in suit, as originally filed reveals that although the patentees disclosed the simultaneous threading of the pipe as the preferred form of their invention, they did not consider that the invention of the patent in suit was limited thereto. The original specification as filed in the patent in suit specifically pointed out that the units of the apparatus could be mounted separately for separate operation if so desired.

14. During the prosecution of the original application for United States Patent No. 2,800,942, from which the patent in suit, Re: 24,441, was reissued, the patentees stressed in connection with some of their claims the simultaneous threading of the pipe, but there were at all times other claims present in the application which were not directed to such feature; when the claims which were allowed as claims 1–9 of the patent in suit were presented, all of the claims theretofore in the case were cancelled, including claim 17 which had called for "means" for simultaneously threading both ends of a pipe, and such "means" was not included in the allowed claims (patent claims 1–9) of the patent in suit. Therefore, the plaintiffs are not estopped by reason of the proceedings in the Patent Office as reflected by the file wrappers of the original Patent No. 2,800,942 and the reissue patent Re: 24,441, from construing the claims of the patent in suit to cover the defendants' four stage machine in which the simultaneous forming of male threads and female threads is effected, even though such threads are formed in two stages.

15. Defendants had knowledge of the patent in suit at least as early as August 14, 1957 but nevertheless defendants continued to operate and use the Brown thread rolling machine for the manufacture of shot hole casing; defendants attempted to avoid their infringement by changing the Brown thread rolling machine in 1957 after notice of the patent in suit but without changing the substance of its operation.

16. The 1953 Parker machine built by plaintiff, J. R. Parker, for threading pipe for the defendants was not actually completed in accordance with the terms of the claims of the patent in suit until after October 8, 1953 and therefore the invention of the Parker patent in suit as claimed was not in public use more than one year prior to the filing of the patent application on October 8, 1954. The 1953 Parker machine was kept as a trade secret and was never in public use itself. Pipe which was threaded using some components of the 1953 Parker machine was sold prior to October 8, 1953, but the pipe threaded prior to October 8, 1953 was not threaded on the completed 1953 Parker machine built in accordance with the claims of the patent in suit.

17. Claims 7–11, inclusive, of the application for the original Parker Patent No. 2,800,942 were present in the original Parker patent when it was filed and they covered the Brown thread rolling machine; such claims 7–11 were cancelled from the Parker application but during the pendency of the original application, claims 23–31 (patent claims 1–9) were submitted, which claims are the claims allowed in the original and reissue Parker patents, and which claims also cover the Brown thread rolling machine.

## Conclusions of Law

1. This Court has jurisdiction of the subject matter in suit and over the parties involved.

2. Plaintiff, J. R. Parker, is the owner of Reissue patent Re: 24,441, in suit, and all claims for damages for infringement thereof.

3. Under Title 35 U.S.Code, § 282, the patent in suit is presumed to be valid, and the burden of establishing invalidity rests on the defendants. The

presumption of validity in the present case is strengthened by the fact that the Patent Office considered the most pertinent prior art during the examination of the applications for original Parker Patent No. 2,800,942 and reissue Parker patent Re: 24,441, in suit. Each of claims 1–9 of the Reissue patent Re: 24,441 in suit is valid.

4. The prior art offered in evidence by the defendants does not anticipate any of the claims 1–9 of the Reissue patent Re: 24,441, in suit.

5. Each of the claims 1–9 of the Reissue patent Re: 24,441 sets forth a structure which involves invention over the prior art.

6. Where there has been a long standing need for the solution to overcome defects in the prior art, and where the defendants themselves have attempted to solve the problems without success, the solution to the problem as finally solved by the patentees of the patent in suit was not obvious to those skilled in the art.

7. The copying by the defendants of the plaintiffs' thread rolling machine after the defendants own unsuccessful attempts to overcome the defects of the prior art, is evidence of the invention involved in the patent in suit since it indicates a recognition by the defendants of the importance and value of the machine of the patent in suit.

8. Commercial success, standing alone, is not necessarily indicative of invention, but commercial success when compared with a lack of commercial success in prior machines attempting to do the same job, is indicative of invention.

9. A "whereby" clause in a patent claim does not add any structural limitations to the claim and cannot constitute the inventive feature upon which the allowance of a patent is based; therefore, the "whereby" clause of claim 1 of the patent in suit which refers to simultaneous threading does not add any structural limitation to claim 1, or the claims 2–9 dependent therefrom, and could not have been the inventive feature upon which the Patent Office allowed the claims of the patent in suit.

10. There may be a file wrapper estoppel in a patent when an applicant for a patent amends his patent claims to distinguish over the prior art, but where claims are amended to distinguish over the prior art, no file wrapper estoppel is created as to other elements of the claim which were unnecessary to distinguish over the prior art; therefore, the doctrine of equivalents may be applied as to features of a claim which were not the novelty over the prior art. Here, the novelty over the prior art in the claims as allowed in both the original and reissue Parker patents was in the unrestrained or axial movement of the pipe during the rolling of threads on a pipe with dies, one of which entered the bore of the pipe and the other of which contacted the exterior of the pipe. Because of such novelty, it is possible to employ two sets of dies to simultaneously thread both ends of a pipe but it is also possible to employ the novelty of the claims of the patent in suit with two sets of dies which are operated simultaneously on the ends of two pipes as in the four stage Brown thread rolling machine. Therefore, the doctrine of equivalents is applicable to the four stage Brown thread rolling machine, which machine is an equivalent of the Parker apparatus since it accomplishes the novel results of the apparatus of the claims in the Parker patent in suit in substantially the same way and with substantially the same structure.

11. The sale of pipe threaded by various components of the 1953 Parker machine prior to the completion of the machine in accordance with the invention of the claims of the patent in suit, even though more than one year prior to the filing of the application for the original Patent No. 2,800,942, does not constitute a public use of the machine set forth in the claims of the patent in suit.

12. Since the original Parker Patent No. 2,800,942 and the reissue patent Re:

24,441 originally contained claims covering the Brown thread rolling machine, and the claims which were allowed as the patent claims 1–9 also cover the Brown thread rolling machine, both as to the three stage and four stage versions, and also since the only change in the applications for such patents was a correction of an obvious draftsman's error which conformed with the original disclosure in the original Parker Patent No. 2,800,942, there can be no public use under the doctrine of late claiming set forth in Muncie Gear Works v. Outboard Marine & Mfg. Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171.

13. There can be no intervening rights under Title 35 U.S.Code, § 252 where the claims in the original Parker Patent No. 2,800,942 and the reissue patent Re: 24,441 were identical with the exception of the word "in" in claim 1 which was omitted from the original patent by the printer and was added to claim 1 in the reissue patent to correct such printer's error in the original patent. The correction of the drawing in the reissue patent Re: 24,441 to conform with the original disclosure of the original Patent No. 2,800,942 did not create intervening rights for the defendants because no change was made in either the wording or meaning of the claims in the original and reissue patents.

14. The plaintiff, J. R. Parker, is entitled to an injunction against further infringement of the reissue patent Re: 24,441, to an accounting and proper damages for patent infringement from August 14, 1957 until final judgment, together with interest, and to an award of costs. The questions of willful infringement, increasing of damages under Title 35 U.S.Code, § 284, the amount and period of interest, and attorneys' fees under Title 35 U.S.Code, § 285 are hereby specifically reserved until the accounting period.